**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:17-CR-106-TSE-4 |
| v. ) | |
| ) | The Honorable T.S. Ellis, III |
| LAMONT KORTEZ GAINES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**SUPPLEMENTAL REPLY BRIEF REGARDING DEFENDANT'S SENTENCING**

This Court seeks a way to avoid imposing an excessive prison sentence on defendant Gaines. A recent change in the law would allow the Court to do exactly that. The United States raises three arguments why the Court should nevertheless sentence Gaines to 82 years in prison. For the reasons set forth below, none of these arguments is persuasive, and they should not prevent the Court from sentencing Gaines to a more reasonable prison term.

**A.      Gaines's Supplemental Brief Is Timely**

On May 15, 2018, this Court appointed counsel for defendant Gaines to "research whether any legal [principle] could be applied to avoid the imposition" of four consecutive mandatory terms of imprisonment and to "file a supplemental brief regarding defendant's sentencing." Dkt. 209 at 1-2. Even so, the United States argues that Gaines's efforts are "untimely." Dkt. 219 at 4-6.

There is nothing untimely about Gaines's argument. First, this Court has inherent supervisory power to "formulate procedural rules not specifically required by the Constitution or by Congress," *United States v. Goodson*, 204 F.3d 508, 514 (4th Cir. 2000) (quoting *United*

*States v. Hasting*, 461 U.S. 499, 505 (1983)), and ordering supplemental briefing regarding Gaines's sentence is well within that power.

Second, as the United States acknowledges, this Court may consider an out-of-time motion filed under Rule 12(b)(3) of the Federal Rules of Criminal Procedure if it finds "good cause" to do so. Fed. R. Crim. P. 12(c)(3).[1] "Good cause" is a "flexible standard that requires consideration of all interests in the particular case." Fed. R. Crim. P. 12 advisory committee's note. In this case, in view of all the interests at stake, there is certainly "good cause" for the timing of Gaines's argument. To begin with, this Court ordered supplemental briefing on the question of whether the law would allow it not to impose an 82-year sentence. That is "good cause" enough. In addition, the Supreme Court's decision in *Sessions v. Dimaya*, 138 S.Ct. 1204 (2018), which was decided on April 17, 2018, just ten days before Gaines's sentencing hearing, also presents a change in the law sufficient to justify a finding of "good cause." *Cf. United States v. White*, 836 F.3d 437, 443-44 (4th Cir. 2016) (holding that "when an intervening decision of this Court or the Supreme Court affects precedent relevant to a case pending on direct appeal, an appellant may timely raise a new argument, case theory, or claim based on that decision while his appeal is pending without triggering the abandonment rule").

Separately, this Court has the power to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Ordinarily a motion for a new trial under Rule 33 must be filed within 14 days of the verdict, but that period may be extended if the party's late filing is the result of "excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). The determination of whether a party has acted with "excusable neglect" in filing a motion for a new

---

[1] The United States contends that Gaines has "[i]n essence" filed a "motion asserting a defect in the indictment," Dkt 219 at 4, which is why we are addressing the standard under Rule 12(c). However, as indicated below, this is not the only relevant standard.

trial is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," *United States v. McConnell*, No. 2:14CR00001-009, 2015 WL 2365628 at *1 (W.D. Va. 2015) (internal citations omitted). Beyond that, "[c]ourts have held that a significant intervening change in the law is a valid reason for delay in filing post-verdict motions, particularly where the timing of the Supreme Court's decision was clearly beyond the defendant's control." *Id.* at *3 (internal citations omitted). For the same reasons that "good cause" exists under Rule 12(c), therefore, so does "excusable neglect."

B.   **Hobbs Act Robbery Is Not Categorically a "Crime of Violence"**

The United States acknowledges that the definition of robbery under the Hobbs Act tracks the common law definition of robbery. *See* Dkt. 219 at 7. But it nevertheless tries to avoid the clear implication of this fact: Robbery under the Hobbs Act – like robbery under the common law of Virginia, the state in which all of the crimes for which Gaines was convicted occurred, and like robbery under the common law of North Carolina – does not require "violent force" and is therefore not categorically a "crime of violence" under the "force clause," Section 924(c)(3)(A). *See United States v. Evans*, 848 F.3d 242, 245 (2017) ("'physical force' requires the use of 'violent force,' which necessarily 'connotes a substantial degree of force'") (citing *Johnson v. United States*, 559 U.S. 133, 140 (2010)).

In *United States v. Winston*, a case decided just last year, the Fourth Circuit reversed its 1995 decision in *United States v. Presley*, 52 F.3d 64 (4th Cir. 1995), and held, for the first time, that the "minimum conduct necessary to sustain a conviction for Virginia common law robbery does not necessarily include the use, attempted use, or threatened use of 'violent force . . . capable of causing physical pain or injury to another person,' under [*Johnson*, 559 U.S at 140]." 850 F.3d 677, 685 (4th Cir. 2017). A central reason the court gave for reversing its decision in

3

*Presley* was that the Supreme Court had, in the intervening years, "settled competing views of federal courts regarding the amount of force required to qualify as the use or threatened use of physical force . . . ." *Id.* at 684.

The year before it decided *Winston*, the Fourth Circuit reached the same conclusion with respect to common law robbery in North Carolina, basing its decision in part upon the fact that the North Carolina courts have concluded that "pushing" someone in the context of committing a robbery satisfies the force element of the crime, which requires commission "by means of violence or fear." *See United States v. Gardner*, 823 F.3d 793, 802-04 (4th Cir. 2016) ("[W]e conclude that the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not necessarily include the use, attempted use, or threatened use of 'force capable of causing physical pain or injury to another person.'") (citing *Johnson*, 559 U.S. at 140).  There is no reason why the definition of robbery under the Hobbs Act, which the government acknowledges tracks the common law, should require any additional level of force.

The United States tries to diminish the importance of the holdings in *Winston* and *Gardner* by noting that in both cases the court was interpreting state law.  *See* Dkt. 219 at 13.  But the Fourth Circuit often looks to state law for guidance in interpreting the meaning of federal law.  For example, in a case the government relies upon that was decided before *Winston* or *Gardner*, the Fourth Circuit looked to its now-reversed interpretation of the Virginia robbery statute to conclude that federal bank robbery is a "crime of violence."  *See United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016) (relying on *United States v. Presley* and concluding that defendants "have presented no sound basis for concluding that the 'intimidation' element of Virginia robbery is any narrower or broader than the 'intimidation' element of federal bank

4

robbery"). *Winston* should provide an equivalent level of guidance to this Court in interpreting the measure of force required to satisfy the force requirement of the Hobbs Act.

A finding that Hobbs Act robbery is not categorically a "crime of violence" would also be consistent with two Fourth Circuit decisions holding that Hobbs Act robbery can be committed with minimal force. The United States ignores these decisions, noting merely that the defendant "points to no published decision . . . that did not involve, at a minimum, a threat of physical force." Dkt. 219 at 10. The government further says that a defendant cannot simply point to "hypothetical" possibilities that Hobbs Act robbery could be committed through nonviolent means, but must point to actual cases. *Id.*

These arguments do not reckon with two very real, unanimous, unpublished Fourth Circuit cases cited in Gaines's opening supplemental brief. In *United States v. Smith*, the court found that the defendant, an employee in a doctor's office who was convicted of Hobbs Act robbery for taking boxes of pharmaceuticals, satisfied the force element of the Hobbs Act because he "shoved" someone after that person "grabbed" him and told him to stop. 141 Fed. Appx. 83, 87 (4th Cir. 2005) (unpublished) (per curiam). Similarly, in *United States v. Pledge*, the court found that the defendant, a police officer who was convicted of Hobbs Act robbery for taking money from drug dealers, satisfied the force element of the Hobbs Act even though he did not "directly threaten[]" any of his victims. 51 Fed. Appx. 911, 914 (2002) (unpublished) (per curiam).

The government correctly points out that the other Circuits to have addressed the question of whether Hobbs Act robbery is categorically a "crime of violence" under Section 924(c) have concluded that it is. *See* Dkt. 219 at 8. But the Fourth Circuit, which recently "assum[ed] that a Hobbs Act robbery is not a crime of violence," *United States v. Hare*, 820 F.3d

5

93, 106 (4th Cir. 2016), has not reached that conclusion. The better argument in this Circuit – which has concluded that common law robbery in Virginia and North Carolina can be committed through non-violent means and has found that the Hobbs Act's force element is satisfied even when the defendant uses minimal force – is that Hobbs Act robbery is not a categorical "crime of violence."

C.     **The "Categorical Approach" Applies to Section 924(c)(3)(B)**

The United States devotes nearly half its brief to the surprising contention that this Court should discard the "categorical approach" in analyzing whether Hobbs Act robbery is a "crime of violence" under the "residual clause," 18 U.S.C. 924(c)(3)(B). Dkt. 219 at 14-24. The government's position is curious because the United States has repeatedly taken the exact opposite position. Moreover, the government neglects to mention that Fourth Circuit precedent requires this Court to employ the categorical approach in the circumstances of this case.

For many years, the United States has argued that the categorical approach applies when analyzing the question of whether a particular offense is a "crime of violence" under Section 924(c)(3)(B). For example, in its opening brief in *United States v. Ali*, which is currently pending in the Fourth Circuit, the United States contends that "[u]nder § 924(c)(3)(B), the ordinary case is defined by the elements of the offense, and a court does *not* consider risks that arise only after the physical acts constituting the crime have been completed. Instead, the court asks whether the offense elements would 'naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense.'" *United States v. Ali*, No. 15-4433, Brief for Appellee at 55 (4th Cir. Feb. 26, 2016) (emphasis in original) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004)). As another example, in *United States v. Prickett*, the United States filed a petition for rehearing *en banc* in the Eighth Circuit, *despite*

6

*having won below*, explicitly in order to argue that "Section 924(c)(3)(B) requires a categorical approach." *See United States v. Prickett*, United States' Petition for Panel Rehearing, No. 15-3486 at 1, 5-7 (8th Cir. Sept. 9, 2016).

The United States makes passing reference to the fact that it has "previously argued" that Section 924(c)(3)(B) requires a categorical approach. Dkt. 219 at 14. But it does not mention that Fourth Circuit precedent leaves this Court with no alternative. In *McNeal,* which the government points to for other reasons, *see* Dkt. 219 at 12-13, the Fourth Circuit said unequivocally: "We have referred to subparagraph (A) of § 924(c)(3) as the 'force clause' and to subparagraph (B) as the 'residual clause.' In determining whether an offense is a crime of violence under *either clause*, we utilize the categorical approach." 818 F.3d at 152 (citations omitted) (emphasis added). In an even more recent case, which the government fails to cite, a panel of the Fourth Circuit noted that while in its view the categorical approach is a "bad fit" in Section 924(c) cases, it had no choice under Circuit precedent but to apply it. *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017) ("Our precedent requires application of that approach, however, and accordingly, we must address whether Irby's . . . conviction is categorically a crime of violence . . . .").[2] The United States offers no explanation for why this Court should ignore binding Circuit precedent and discard the categorical approach.

A final point on this issue: Now that the Supreme Court, employing the categorical approach, has decided that the residual clause of 18 U.S.C. § 16(b) is unconstitutionally vague,

---

[2] The Fourth Circuit recently ordered supplemental briefing in *United States v. Simms*, which is tentatively scheduled to be heard *en banc* in September, to address the question of whether, "[i]n reviewing a defendant's conviction under 18 U.S.C. § 924(c)(1)(A)," a court should "use the categorical approach to determine whether the defendant committed a crime of violence within the meaning of 18 U.S.C. § 924(c)(3)(B)." *United States v. Simms*, No. 15-4640, Order at 1 (4th Cir. June 15, 2018).

*Dimaya*, 138 S.Ct. at 1216, there is no reason why this Court or any other court should treat the identically worded residual clause of Section 924(c)(3)(B) any differently. The United States has previously argued that the two clauses are "materially identical," *e.g., United States v. Prickett*, No. 15-3486, United States' Petition for Panel Rehearing at 4 (8th Cir. Sept. 9, 2016), and all four dissenting Justices in *Dimaya* appear to acknowledge the implications of the Supreme Court's decision for Section 924(c)(3)(B). *See Dimaya*, 138 S.Ct. at 1241 (Roberts, C.J., dissenting) ("Of special concern, § 16 is replicated in the definition of 'crime of violence' applicable to § 924(c) . . . . Though I express no view on whether § 924(c) can be distinguished from the provision we consider here, the Court's holding calls into question convictions under what the Government warns is an 'oft-prosecuted offense.'") (internal citation omitted).

**D.** **<u>Conclusion</u>**

The 82-year sentence the United States seeks to impose in this case bears no rational relationship to the crimes for which Gaines has been convicted. The United States likely realizes this, despite its suggestion that putting Gaines in prison for the rest of life would advance Congress's goal of reducing gun violence. *See* Dkt. 219 at 1.[3] Nevertheless, Gaines does not expect the government to exercise its discretion to dismiss his mandatory 25-year terms of imprisonment, as it unequivocally has the power to do. *See, e.g., United States v. Washington*, No. 1:11-cr-00605, Nolle Prosequi at 1 (Dec. 18, 2014) (voluntarily dismissing 924(c) count following trial conviction because "imposing the 25-year consecutive mandatory minimum sentence associated with Washington's conviction on Count Five . . . would not be in the

---

[3] It bears note that there is currently a bill pending in Congress that would cure the unfairness in this case and other similar cases. *See* Sentencing Reform and Corrections Act of 2017, S. 1917, 115 Cong. § 104 (2017) (replacing "second or subsequent conviction under this subsection" in Section 924(c)(1)(C) with "violation of this subsection that occurs after a prior conviction under this subsection has become final").

interests of justice"). It is therefore left to this Court to deliver justice in this case. The Supreme Court's decision three months ago in *Dimaya* would allow the Court not to sentence Gaines to the three mandatory minimum sentences for which Hobbs Act robbery is the predicate crime, and we respectfully urge the Court to take that opportunity.

Defendant Gaines requests an oral hearing.

Respectfully Submitted,

/s/ W. Michael Chick, Jr.
W. Michael Chick, Jr.
VSB: 70892
*Trial Counsel for Defendant Lamont Kortez Gaines*
Law Offices of W. Michael Chick, Jr.
10513 Judicial Drive, Suite 102
Fairfax, Virginia 22030
Tel: (571) 276-8279
Fax: (571) 748-4399
mike@chicklawfirm.com

/s/ Daniel Suleiman
Daniel Suleiman
Kendra N. Mells*
*Appointed Pro Bono Counsel for Defendant Lamont Kortez Gaines*
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Tel: (202) 662-5811
Fax: (202) 778-5811
dsuleiman@cov.com

---

\* Ms. Mells is a member of the Bar of Georgia. Her District of Columbia Bar application is pending; she is supervised by principals of the firm.

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2018, I caused a copy of the foregoing **SUPPLEMENTAL REPLY BRIEF REGARDING DEFENDANT'S SENTENCING** to be served by the Court's ECF Filing system on all counsel of record.

    /s/ W. Michael Chick, Jr.
W. Michael Chick, Jr.
VSB: 70892
*Trial Counsel for Defendant Lamont Kortez Gaines*
Law Offices of W. Michael Chick, Jr.
10513 Judicial Drive, Suite 102
Fairfax, Virginia 22030
Tel:  (571) 276-8279
Fax:  (571) 748-4399
mike@chicklawfirm.com