IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal Case No. 1:17-cr-106** |
| | ) | |
| **DESMAR RASHAD GAYLES,** | ) | |
| **ANDREW BERNARD DUNCAN,** | ) | |
| **ANTON DURRELL HARRIS, and** | ) | |
| **LAMONT KORTEZ GAINES,** | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

At issue post-sentencing in this multiple-defendant criminal prosecution for, *inter alia*, armed robbery and carjacking are Defendants Desmar Gayles, Lamont Gaines, Andrew Duncan, and Anton Harris's motions for sentence reductions pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Dkts. 312, 326, 335, and 344. Also at issue are Defendants Gayles and Harris's motions to vacate convictions and sentences pursuant to 28 U.S.C. § 2255. *See* Dkts. 247, 252, and 277.

For the reasons stated in this Memorandum, the requests for sentence reductions under § 3582(c)(1)(A) by Defendants Gayles, Duncan, and Harris will be granted based on post-sentencing First Step Act amendments to 18 U.S.C. § 924(c) and the Fourth Circuit's decision in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020). Additionally, Defendants Gayles and Harris's motions under § 2255 must be denied. Finally, a ruling on Defendant Gaines's motion under § 3582(c)(1)(A) will be deferred pending appointment of counsel for Defendant Gaines and further briefing on his motion.

**I.**

The prosecution of Defendants Duncan, Gayles, Harris, and Gaines grew out of a crime spree that included a substantial number of armed robberies of convenience stores and other

1

commercial establishments in Virginia and Maryland. As a result, on May 8, 2017, a grand jury returned a 41-count Indictment against the four Defendants. The Indictment charged the Defendants with both individual and joint counts of: criminal conspiracy, in violation of 18 U.S.C. § 1951(a); obstruction of commerce by robbery, in violation of 18 U.S.C. §§ 2 & 1951(a); carjacking, in violation of 18 U.S.C. §§ 2 and 2119; brandishing a firearm during a crime of violence, in violation of 18 U.S.C. §§ 2 & 924(c)(1)(A); and unlawful possession of a firearm, in violation of 18 U.S.C. §§ 2 & 922(g)(1). *See* Dkt. 18.

Analysis of Defendants' motions properly begins with a summary of the criminal conduct underlying this prosecution, as reflected in each Defendant's Presentence Investigation Report ("PSR"), the Defendants' statements of facts, and the record as a whole. Because each Defendant participated in some robberies but not others, it is also necessary to summarize briefly each Defendant's individual conduct, as well as each Defendant's criminal history, sentencing, and post-sentencing conduct.

**A. Underlying Criminal Conduct**

The conspiracy and crime spree charged in the Indictment began on November 1, 2016, when Defendant Duncan and two co-conspirators robbed a 7-Eleven convenience store in Alexandria, Virginia. Through the end of 2016, Defendants Duncan and Gayles participated in armed robberies of seven additional convenience stores and one hotel in northern Virginia and Maryland. The crime spree resumed in March 2017, by which time Defendants Harris and Gaines had also become active participants in the spree. In March and April 2017, the four Defendants variously participated in eleven robberies and three carjackings in Maryland, Virginia, and Washington, D.C. In sum, the Defendants collectively committed a total of twenty robberies and

2

three carjackings. Importantly, firearms were brandished at all but one of these incidents. *See* Gaines PSR (Dkt. 282) at ¶¶ 12–42.

### B. Defendant Duncan

Defendant Duncan, born on October 24, 1990, was the earliest and most frequent participant in the underlying robberies and carjackings. Specifically, in November and December of 2016, Defendant Duncan participated in armed robberies of the following nine commercial establishments: (i) a 7-Eleven in Alexandria, Virginia on November 1, 2016; (ii) a 7-Eleven in Alexandria, Virginia on November 16, 2016; (iii) a 7-Eleven in Alexandria, Virginia on November 22, 2016; (iv) a Dash In convenience store in Fort Washington, Maryland on December 6, 2016; (v) a 7-Eleven in Alexandria, Virginia on December 7, 2016; (vi) a 7-Eleven in Alexandria, Virginia on December 13, 2016; (vii) a 7-Eleven in Bladensburg, Maryland on December 13, 2016; (viii) a Quality Inn in Alexandria, Virginia on December 15, 2016; and (ix) a 7-Eleven in College Park, Maryland on December 22, 2016.

Thereafter, between March 16 and March 29, 2017, Defendant Duncan participated in a total of eight armed robberies of various commercial establishments in Maryland and Virginia: (i) a Dash In convenience store in Fort Washington, Maryland on March 16, 2017; (ii) a Shell Gas Station in Arlington, Virginia on March 19, 2017; (iii) a Red Roof Inn located in Alexandria, Virginia on March 19, 2017; (iv) a Domino's Pizza in Alexandria, Virginia on March 19, 2017; (v) a Game Stop in District Heights, Maryland on March 21, 2017; (vi) a 7-Eleven in Alexandria, Virginia on March 26, 2017; (vii) a 7-Eleven in College Park, Maryland on March 26, 2017; and (viii) the Advance America Cash Advance store in Springfield, Virginia on March 29, 2017. Defendant Duncan also participated in carjackings on March 18, 2017, in Temple Hills, Maryland,

and on March 26, 2017, in Washington, D.C. Defendant Duncan's involvement in these criminal activities came to an end with Defendant Duncan's arrest on March 29, 2017.[1]

In sum, Defendant Duncan participated in a total of seventeen robberies and two carjackings. A firearm was brandished during all but one of those robberies/carjackings, and Defendant Duncan personally brandished a firearm during seven of the robberies/carjackings.

Following his indictment in this matter, the Government allowed Defendant Duncan to plead guilty to two § 924(c) charges and the Government, in exchange, agreed to dismiss the remaining counts against Defendant Duncan. *See* Dkt. 101 (Duncan Plea Agreement). Given the § 924(c) stacking provisions then in effect, Defendant Duncan faced a severe mandatory minimum of 32 years (384 months), consisting of a term of seven years for the first § 924(c) offense and a consecutive term of twenty-five years for the second § 924(c) offense. Had Defendant Duncan been sentenced after enactment of the First Step Act, he would have faced a mandatory minimum of only fourteen years for the two § 924(c) charges to which he pled guilty,[2] although it is unknown whether the Government would have offered Defendant Duncan the same plea bargain had the current § 924(c) sentencing scheme been in effect at that time.

At the time of sentencing, Defendant Duncan fell into Criminal History Category IV. Defendant Duncan's criminal history discloses two notable convictions prior to the instant offense.

---

[1] The statement of facts filed with Defendant Duncan's plea agreement discusses most, but not all, of these criminal offenses, and acknowledges that it does not contain a complete account of Defendant Duncan's involvement in the crime spree. *See* Duncan Statement of Facts (Dkt. 102). Subsequent development of the record through the conclusion of Defendant Gaines's trial disclosed a more complete picture of the underlying robberies and carjackings. *See* Gaines PSR (Dkt. 282) at ¶¶ 14–38.

[2] Specifically, before the First Step Act, a defendant convicted for multiple § 924(c) brandishing offenses under the same indictment faced a mandatory minimum of seven years for the first count and twenty-five years for each subsequent count, to be served consecutively. Following the First Step Act, that harsh stacking provision now applies only when a defendant is convicted of § 924(c) charges in separate indictments stemming from different courses of conduct. Where, as here, a defendant is adjudged guilty of multiple § 924(c) brandishing offenses within the same indictment, the defendant faces only seven years for each count, to be served consecutively.

First, in 2008, Defendant Duncan participated in an apparent home invasion and was subsequently found guilty of burglary and assault with a dangerous weapon in Washington, D.C. Superior Court. Second, in 2012, Defendant Duncan was a passenger in a stolen vehicle driven by Defendant Gaines when Defendant Gaines attempted to flee from law enforcement. Police officers were able to detain the vehicle's occupants after Defendant Gaines crashed the stolen automobile, and the officers found a loaded revolver and suspected cocaine on Defendant Duncan's person. Defendant Duncan was later convicted of possession of cocaine and unlawful possession of a firearm in Washington, D.C. Superior Court. *See* Duncan PSR (Dkt. 160) at ¶¶ 49–56.

At sentencing, Defendant Duncan received the mandatory minimum sentence of 32 years, or 384 months, that was in effect prior to the First Step Act. *See* Dkt. 158 (Duncan Judgment). Since the beginning of Defendant Duncan's term of confinement, Defendant Duncan has taken positive steps towards rehabilitation. In a brief filed last year, the Government acknowledged that Defendant Duncan has a clean record as an inmate. Specifically, Defendant Duncan "has incurred no disciplinary infractions, completed a handful of educational courses, secured a prison job, and made contributions towards the restitution he owes." Dkt. 337 at 19.

### C. Defendant Gayles

Defendant Gayles, born on August 1, 1992, was also a frequent participant in the underlying crime spree and often brandished firearms during the relevant armed robberies. Specifically, in late 2016, Defendant Gayles participated in six armed robberies of the following commercial establishments: (i) a 7-Eleven in Alexandria, Virginia on November 16, 2016; (ii) a 7-Eleven in Alexandria, Virginia on November 22, 2016; (iii) a Dash In convenience store in Fort Washington, Maryland on December 6, 2016; (iv) a 7-Eleven in Bladensburg, Maryland on December 13, 2016 (as a getaway driver); (v) a Quality Inn in Alexandria, Virginia, on December

15, 2016 (as a getaway driver); and (vi) a 7- Eleven located in College Park, Maryland on December 22, 2016.

In March 2017, Defendant Gayles participated in eight robberies of the following commercial establishments: (i) a Dash In convenience store in Fort Washington, Maryland on March 16, 2017; (ii) a Shell Gas Station in Arlington, Virginia on March 19, 2017; (iii) a Red Roof Inn located in Alexandria, Virginia on March 19, 2017; (iv) a Domino's Pizza in Alexandria, Virginia on March 19, 2017; (v) a Game Stop in District Heights, Maryland on March 21, 2017; (vi) a 7-Eleven in Alexandria, Virginia on March 26, 2017; (vii) a 7-Eleven in College Park, Maryland on March 26, 2017; and (viii) the Advance America Cash Advance store in Springfield, Virginia on March 29, 2017. Defendant Gayles also committed two carjackings, with the first on March 18, 2017, in Alexandria, Virginia and the second on March 26, 2017, in Washington, D.C.[3]

In sum, Defendant Gayles participated in a total of fourteen armed robberies and two carjackings between November 2016 and March 2017. Defendant Gayles personally brandished a firearm on at least ten occasions.

Following his indictment in this matter, Defendant Gayles, like Defendant Duncan, was permitted to plead guilty to just two § 924(c) counts. *See* Dkt. 126 (Gayles Plea Agreement). Also like Defendant Duncan, Defendant Gayles was sentenced before the passage of the First Step Act. At the time of sentencing, Defendant Gayles's criminal history consisted of two narcotics-related convictions: possession of marijuana in 2012 and possession of cocaine in 2016, both in

---

[3] Like Defendant Duncan, Defendant Gayles's statement of facts discusses several, but not all, of the offenses listed here. However, the statement also acknowledges that it does not contain a complete account of Defendant Gayles's conduct with respect to the crime spree. *See* Gayles Statement of Facts (Dkt. 127). A more complete picture of Defendant Gayles's underlying conduct later emerged. *See* Gaines PSR at ¶¶ 15–37.

Washington, D.C. Superior Court. These offenses placed Defendant Gayles in Criminal History Category III. *See* Gayles PSR (Dkt. 184) at ¶¶ 42–46.

Ultimately, Defendant Gayles, like Defendant Duncan, received the mandatory minimum prison term of 32 years, or 384 months. *See* Dkt. 205 (Gayles Judgment). A review of Defendant Gayles's conduct since sentencing reveals one June 2018 disciplinary incident in which Defendant Gayles swallowed a contraband suboxone pill. Other than that single incident, Defendant Gayles's disciplinary record is incident-free. *See* Dkt. 331 at 18.

### D. Defendant Harris

Defendant Harris, born on March 14, 1990, became an active member of the crime spree underlying this prosecution in March 2017. During March and April of that year, Defendant Harris participated in seven armed robberies of the following commercial establishments: (i) a Shell Gas Station in Arlington, Virginia on March 19, 2017; (ii) a Red Roof Inn in Alexandria, Virginia on March 19, 2017; (iii) a Domino's Pizza in Alexandria, Virginia on March 19, 2017; (iv) a Game Stop in District Heights, Maryland on March 21, 2017; (v) the America Advance Cash Advance in Fairfax County, Virginia on April 6, 2017; (vi) a 7-Eleven in Arlington, Virginia on April 8, 2017; and (vii) a 7-Eleven in Arlington, Virginia on April 12, 2017. Defendant Harris personally brandished a firearm on at least two occasions. *See* Harris Statement of Facts (Dkt. 148); Gaines PSR at ¶¶ 28–42.

Following indictment in this matter, Defendant Harris, like Defendants Duncan and Gayles, was permitted to plead guilty to two § 924(c) counts and the remaining counts were dismissed. *See* Dkt. 147 (Harris Plea Agreement). As with Defendants Duncan and Gayles, Defendant Harris was sentenced before the First Step Act.

Prior to the instant offense, Defendant Harris had the most substantial criminal history of the four Defendants discussed in this Memorandum. Defendant Harris's first adult conviction stemmed from a 2010 incident in Columbia, South Carolina, in which Defendant Harris fled from police while driving a stolen automobile. A year later, Defendant Harris also pled guilty to possession of marijuana in Columbia, South Carolina. In 2012, Defendant Harris was convicted of misdemeanor receipt of stolen goods and felony unauthorized use of a vehicle in Washington, D.C. Superior Court. Finally, that same year, Defendant Harris was also convicted of receipt of a stolen automobile in Arlington County, Virginia. In light of these offenses, Defendant Harris fell into Criminal History Category V. *See* Harris PSR (Dkt. 186) at ¶¶ 38–49.

At sentencing, Defendant Harris, like Defendants Duncan and Gayles, received a prison sentence of 384 months, or 32 years, which was the mandatory minimum then in effect. *See* Dkt. 214 (Harris Judgment). Since sentencing, the Government acknowledges that Defendant Harris "has incurred no disciplinary infractions, secured a prison job, and made contributions towards the restitution he owes." Dkt. 346 at 21. A recent update from the Bureau of Prisons confirms that Defendant Harris continues to have a clean disciplinary record and has maintained his work assignment.

### E. Defendant Gaines

Defendant Gaines, born on January 16, 1990, also became an active member of the underlying spree in 2017. In March and April of that year, Defendant Gaines participated in armed robberies of the following six commercial establishments: (i) a Shell Gas Station in Arlington, Virginia on March 19, 2017 (as a getaway driver); (ii) a Red Roof Inn in Alexandria, Virginia on March 19, 2017 (as a getaway driver); (iii) a Domino's Pizza in Alexandria, Virginia on March 19, 2017 (as a getaway driver); (iv) the America Advance Cash Advance in Fairfax County,

Virginia on April 6, 2017; (v) a 7-Eleven in Arlington, Virginia on April 8, 2017; and (vi) a 7-Eleven in Arlington, Virginia on April 12, 2017. Defendant Gaines also participated in a carjacking in Alexandria, Virginia on March 18, 2017. Defendant Gaines personally brandished a firearm on at least two occasions. *See* Gaines PSR at ¶¶ 28–42.

Following indictment in this matter, unlike the other Defendants, Defendant Gaines elected to proceed to a jury trial. On January 26, 2018, a jury found Defendant Gaines guilty on a total of twelve counts, including four counts under § 924(c). *See* Dkt. 175. The other counts of conviction included obstruction of commerce by robbery, in violation of 18 U.S.C. §§ 2 and 1951(a), carjacking, in violation of 18 U.S.C. §§2 and 2119, unlawful possession of a firearm, in violation of 18 U.S.C. §§ 2 and 922(g)(1), and criminal conspiracy, in violation of 18 U.S.C. § 1951(a).

Before the instant prosecution, in 2012, Defendant Gaines was found guilty of fleeing law enforcement and reckless driving after attempting to speed away from law enforcement in a stolen vehicle. As noted above, police were able to apprehend Defendant Gaines and his passenger, Co-Defendant Duncan. In 2016, Gaines committed a burglary of an unoccupied residence and later plead guilty to burglary and grand larceny in a Circuit Court in Alexandria, Virginia. These offenses placed Defendant Gaines in Criminal History Category III. *See* Gaines PSR at ¶¶ 100–104.

Prior to Defendant Gaines's sentencing, Congress enacted the First Step Act on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194. Among other changes, the First Step Act substantially reduced the mandatory minimum penalties to be imposed for multiple counts under 18 U.S.C. § 924(c). Under the amended statute, guilty defendants now face seven years for each § 924(c) conviction (when the underlying conduct involves the brandishing of a firearm), with each seven-year term to be served consecutively. *See* 18 U.S.C. § 924(c)(1)(A), (D). Accordingly,

at Defendant Gaines's 2019 sentencing, Defendant Gaines was subject to the post-First Step Act sentencing scheme. Defendant Gaines ultimately received a sentence of 356 months (a sum of the minimum 336-month sentence for his four § 924(c) offenses, consisting of consecutive seven-year terms for each offense, to be followed by 20 months for the eight remaining counts). *See* Dkt. 290 (Gaines Judgment). Thus, despite proceeding to trial, Defendant Gaines received a lower sentence than his co-conspirators who pled guilty but were sentenced under the pre-First Step Act § 924(c) sentencing scheme.

## II.

As a preliminary matter, the parties agree that Defendants Gayles, Duncan, and Harris have fully exhausted their administrative remedies, and therefore their Motions for Sentence Reduction are ripe for disposition.[4] The legal standard for evaluating such motions is well settled. Simply put, a defendant seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing (1) that there are "extraordinary and compelling reasons" warranting a sentence reduction and (2) that analysis of the § 3553(a) factors counsels that a sentence reduction is appropriate as a matter of judicial discretion. 18 U.S.C. § 3582(c)(1)(A); see also *United States v. Sprague*, 838 F. App'x 775, 775–76 (4th Cir. 2021); *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021).

### A. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a court to "modify a term of imprisonment" only upon a finding that "extraordinary and compelling reasons warrant such a reduction." In *United States v.*

---

[4] The Government's opposition to Defendant Harris's motion under 18 U.S.C. § 3582(c)(1)(A) noted that the requisite thirty days from Defendant Harris's filing of a claim with the Bureau of Prisons had not yet passed, but well over thirty days have now elapsed and Defendant Harris's § 3582(c)(1)(A) motion is therefore ripe. *See* Dkt. 346. The Government does not contend that either Defendant Duncan or Defendant Gayles failed to exhaust their administrative claims.

*McCoy*, the Fourth Circuit held that the "severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)." 981 F.3d 271, 285 (4th Cir. 2020). There, defendant Thomas McCoy was indicted for involvement in a string of twelve robberies, but was allowed to plead guilty to two § 924(c) counts and one count of Hobbs Act robbery. Because he was sentenced before the First Step Act, McCoy received a harsh mandatory minimum sentence of approximately thirty-five years in prison. *Id.* at 277. Following enactment of the First Step Act, a district court reduced McCoy's sentence pursuant to § 3582(c)(1)(A) to time served (approximately seventeen years). The Fourth Circuit affirmed, holding that the disparity between the pre- and post-First Step Act mandatory minimum sentences for multiple § 924(c) offenses gave rise to extraordinary and compelling circumstances warranting relief. *Id.* at 286.[5]

The facts presented here with respect to Defendants Duncan, Gayles, and Harris are closely analogous to those presented in *McCoy*. Like the defendant in *McCoy*, these three Defendants pled guilty to two § 924(c) counts and thus, under the pre-First Step Act framework, faced the severe stacking of consecutive terms of seven and twenty-five years. Moreover, as the Fourth Circuit recognized, there is an "enormous disparity" of eighteen years between the pre-First Step Act mandatory minimum sentence of thirty-two years that Defendants Duncan, Gayles, and Harris received and the post-First Step Act mandatory minimum sentence of fourteen years for two § 924(c) brandishing offenses. *See id.* at 285. Accordingly, given the Fourth Circuit's binding and closely analogous *McCoy* precedent, it is appropriate to conclude here that Defendants Duncan,

---

[5] The Fourth Circuit noted that the district court also relied on the fact that "McCoy was a teenager with no relevant criminal history at the time of his offenses." *McCoy*, 981 F.3d at 278.

Gayles, and Harris have identified "extraordinary and compelling" reasons warranting reduction of their sentences under § 3582(c)(1)(A).

The Government's arguments to the contrary are not persuasive. First, the Government's contention that a sentence reduction is not warranted owing to the serious nature of the crime spree underlying this prosecution fails to overcome the extraordinary and compelling reason identified in *McCoy* and presented here. Although the underlying robberies and carjackings are unquestionably very serious violent crimes, the serious nature of those crimes does not extinguish the significant disparity between the pre- and post-First Step Act mandatory minimums sentences. Indeed, the Government overlooks the important fact that the Fourth Circuit affirmed the reduction in *McCoy* notwithstanding the fact that defendant McCoy was charged with involvement in a serious spree of twelve robberies. Similarly, the Government appears to contend that the harsh thirty-two year sentences at issue here are not sufficiently severe to warrant a reduction, noting that many § 924(c)-related sentence reductions granted by district courts in the Fourth Circuit in the wake of *McCoy* involved lengthier initial prison terms. But the Government's contention that the pre-First Step Act thirty-two-year sentences are not severe penalties for the crimes committed is unpersuasive, especially given the fact that the Fourth Circuit affirmed a substantial reduction of McCoy's "incredibl[y] length[y]" sentence of thirty-five years. *McCoy*, 981 F.3d at 278.

Defendant Gaines has also filed a *pro se* motion seeking a sentence reduction under § 3582(c)(1)(A) on the basis of "924(c) stacking." Dkt. 326 at 2. As an initial matter, it does not appear that Defendant Gaines's motion is ripe for disposition, as it is unclear on the current record whether Defendant Gaines has exhausted his administrative claim with the Bureau of Prisons.[6]

---

[6] *See, e.g., United States v. Feiling*, 453 F. Supp. 3d 832, 837 (E.D. Va. 2020) ("By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction . . .").

Even assuming *arguendo* that exhaustion is not a barrier to consideration of Defendant Gaines's motion, however, it is important to emphasize that Defendant Gaines is in a categorically different position from Defendants Duncan, Gayles, and Harris. Specifically, Defendant Gaines has *already* benefited from the First Step Act's amendments to § 924(c). Indeed, Defendant Gaines received the sentence "Congress deemed appropriate in the First Step Act" for four § 924(c) convictions, namely a mandatory minimum of twenty-eight years rather than the pre-First Step Act minimum of eighty-two years. *McCoy*, 981 F.3d at 274. Accordingly, the Fourth Circuit's decision in *McCoy* does not directly govern Defendant Gaines's motion. However, because the motions for sentence reduction by Defendant Gaines's Co-Defendants will be granted, it is necessary and appropriate to consider whether any "extraordinary and compelling reasons" support Defendant Gaines's motion, including an unwarranted disparity created by failure to reduce Defendant Gaines's sentence. Accordingly, counsel will be appointed for Defendant Gaines pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, for the purpose of assisting Defendant Gaines in exhausting his administrative remedies (if necessary) and filing a supplemental brief identifying all bases, if any, for a sentence reduction.

### B.  18 U.S.C. § 3553(a) Factors

Because Defendants Duncan, Gayles, and Harris have identified extraordinary and compelling reasons warranting sentence reductions, it is now necessary to assess, under the § 3553(a) factors, whether a reduction is appropriate and, if so, the appropriate extent of the reduction.

### i.    Defendant Duncan

Defendant Duncan contends that it is appropriate to reduce his sentence to the post-First Step Act mandatory minimum of fourteen years, *i.e.* consecutive terms of seven years for each

count to which Defendant Duncan was permitted to plead guilty. The Government opposes this contention, arguing that no reduction is appropriate under the relevant § 3553(a) factors. Neither the Defendant's nor the Government's positions are persuasive. Instead, application of the § 3553(a) factors confirms that it is appropriate to reduce Defendant Duncan's term of imprisonment from 384 months to 240 months.

First, pursuant to § 3553(a)(1) and (2), Defendant Duncan's sentence must reflect the seriousness of the underlying crime spree and serve to deter similar conduct by others in the future. Accordingly, the serious and extensive nature of Defendant Duncan's underlying criminal conduct weighs heavily in this analysis. Between November 2016 and March 2017, Defendant Duncan participated in a total of seventeen robberies and two carjackings. One or more firearms were brandished on all but one occasion, and Defendant Duncan personally brandished a firearm on at least seven occasions. It is also necessary to emphasize that Defendant Duncan had a significant criminal history before the instant offense, placing Defendant Duncan in Criminal History Category IV. Accordingly, the sentence imposed must also serve to deter Defendant Duncan from undertaking further criminal conduct, though that concern is ameliorated to some extent by Defendant Duncan's meaningful rehabilitative efforts in prison. Finally, § 3553(a)(7) takes into account the interests of crime victims, and Defendant Duncan's offenses—which were achieved through the display of firearms and threat of violence—undoubtedly frightened and traumatized Defendant Duncan's victims. In sum, the characteristics of the underlying offense and strong need for general and specific deterrence make clear that reducing Defendant Duncan's sentence to the post-First Step Act minimum of fourteen years would not be appropriate.[7]

---

[7] It is also worth noting that Defendant Duncan's request for a fourteen-year sentence is premised on a counterfactual fiction, namely that, had Defendant Duncan been indicted after enactment of the First Step Act, the Government would have agreed to a plea bargain that included just two § 924(c) counts.

However, it is also clear that Defendant Duncan's current sentence is excessive in relation to the needs of general and specific deterrence and the other factors set forth in § 3553(a). Importantly, § 3553(a)(4) instructs a court to consider the "sentences available," and it is therefore worth observing that a sentence of thirty-two years constitutes more than double the total mandatory term of imprisonment that Congress has now deemed fit for two § 924(c) convictions. Moreover, a sentence of twenty years or more still represents a very serious penalty and therefore adequately serves the needs of individual and general deterrence.[8] To continue, § 3553(a) also makes clear that district courts must consider applicable provisions of the Federal Sentencing Guidelines and take care to avoid unwarranted disparities between defendants. *See* 18 U.S.C. § 3553(a)(4)–(6). In that regard, it is important to note that defendants who accept responsibility and elect to plead guilty generally receive credit under the Guidelines. *See* U.S.S.G. § 3E1.1. In this case, however, because Defendant Duncan was sentenced prior to passage of the First Step Act, Defendant Duncan received a *lengthier* sentence than Defendant Gaines, who elected to proceed to trial and was convicted of all counts set forth against him in the Indictment. That incongruous result also confirms the propriety of reducing Defendant Duncan's sentence.

In sum, application of the relevant § 3553(a) factors compels the conclusion that it is appropriate to reduce Defendant Duncan's term of imprisonment to a total of twenty years, or 240 months.

### ii.  Defendant Gayles

Application of the § 3553(a) factors with respect to Defendant Gayles also counsels that it is appropriate to impose the same twelve-year sentence reduction. Like Defendant Duncan,

---

[8] For comparison, a sentence of approximately twenty-four years represents the national average sentence for murder. *See United States v. Bryant*, No. CR 95-202-CCB-3, 2020 WL 2085471, at *5 n. 8 (D. Md. Apr. 30, 2020), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

Defendant Gayles was a frequent participant in the spree of dangerous armed robberies and carjackings underlying this prosecution. Defendant Gayles participated in a total of fourteen armed robberies and two carjackings between November 2016 and March 2017, and personally brandished a firearm on ten occasions. Additionally, although Defendant Gayles has a somewhat leaner criminal history than Defendant Duncan, placing Defendant Gayles in Criminal History Category III, Defendant Gayles lacks a clean disciplinary record in prison. Accordingly, the serious nature of the underlying crimes and strong need for general and specific deterrence, confirm that it is appropriate to impose a sentence greater than the fourteen-year minimum requested by Defendant Gayles. *See* § 3553(a)(1), (2).

However, the considerations in support of a sentence reduction discussed with respect to Defendant Duncan also apply with equal force to Defendant Gayles. As noted, a sentence of thirty-two years is undoubtedly excessive in relation to the needs of specific and general deterrence. Additionally, it is plainly inappropriate that Defendant Gayles received a lengthier sentence than Co-Defendant Gaines despite electing to plead guilty. Careful review of the § 3553(a) factors compels the conclusion that Defendant Gayles is similarly situated to Defendant Duncan in all material respects. Therefore, in order to avoid an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct," it is also appropriate to reduce Defendant Gayles's sentence from a total of 384 months to a total of 240 months. 18 U.S.C. § 3553(a)(6).

### iii.    Defendant Harris

Finally, the considerations mentioned above also apply to Defendant Harris, and in light of the § 3553(a) factors it is also appropriate to reduce Defendant Harris's sentence to 240 months. In one sense, Defendant Harris's participation in the underlying crime spree does differ from that

of Defendants Duncan and Gayles: Defendant Harris participated in just seven robberies, as compared to Defendant Gayles's fourteen robberies and Defendant Duncan's seventeen robberies. However, that distinction does not entitle Defendant Harris to a greater sentence reduction, for two reasons.

First, nothing in the record suggests that the any of the Defendants took supervisory or subservient roles in this criminal enterprise. As such, Defendant Harris's smaller number of robberies does not stem from a lesser role in the crime spree, but rather from the fact that Defendant Harris simply joined the conspiracy at a later point in time. Stated otherwise, the fact that Defendant Harris joined the spree at a later date does not lessen the seriousness of the violent armed robberies in which Defendant Harris participated. Indeed, once Defendant Harris joined the spree in March 2017, he was a frequent and active participant, and personally brandished a firearm on at least two occasions. As a result, the overriding need for general deterrence against violent firearms offenses applies with equal force with respect to Defendant Harris. Second, Defendant Harris had the most extensive prior criminal history of the four Defendants discussed in this Memorandum, placing Defendant Harris in Criminal History Category V. Although Defendant Harris has taken positive and ongoing steps towards rehabilitation in prison, his lengthy criminal history nonetheless indicates a strong need for specific deterrence. Accordingly, application of § 3553(a) places Defendant Harris in substantially the same position as Defendants Duncan and Gayles, and Defendant Harris's sentence will therefore also be reduced to 240 months.

*  *  *

In sum, application of the § 3553(a) factors confirms that it is appropriate to reduce the sentences of Defendants Duncan, Gayles, and Harris, though not to the extent requested by each Defendant. Each Defendant actively participated in a serious, violent crime spree that involved

17

brandishing firearms and terrifying victims. Accordingly, in light of the seriousness of the offense conduct, the need for general and specific deterrence, and the impact on victims, it is necessary to impose a sentence that exceeds the post-First Step Act mandatory minimum sentence of fourteen years, or two consecutive terms of seven years, for the two § 924(c) counts to which each Defendant was permitted to plead guilty. Nonetheless, other factors weigh persuasively in favor of a reduction, including: (i) the fact that the three Defendants received a sentence more than double that which Congress now deems appropriate for the offenses to which the Defendants pled guilty, (ii) the fact that the Defendants' thirty-two-year sentences are excessive in light of the need for specific and general deterrence, and (iii) the fact that the three Defendants who accepted responsibility and pled guilty received lengthier sentences than Defendant Gaines, who elected to stand trial.[9]

Importantly, it is also appropriate to impose the same reduction for Defendants Duncan, Gayles, and Harris, inasmuch as the violent criminal conduct in which all three Defendants engaged militates strongly in favor of imposition of equal sentences. To be sure, there are minor differences between the Defendants, such as disparities in the Defendants' specific criminal history categories, but these minor differences do not warrant imposition of disparate sentences.[10] Instead,

---

[9] A comparison to the sentence reduction granted to the named defendant in *McCoy*, 981 F.3d 271, is also instructive. As noted *supra*, Thomas McCoy was indicted for participating in a spree of a dozen armed robberies and pled guilty to charges including two § 924(c) counts. Pursuant to § 3582(c)(1)(A), the district court reduced McCoy's sentence to a total of approximately seventeen years. Application of the § 3553(a) factors counsels that a reduction is also warranted here, though not to the extent granted to McCoy. Although McCoy's case is comparable to Defendants' in several important respects, it is also worth emphasizing that the district court in *McCoy* noted that the defendant was a teenager without a criminal history at the time he participated in the underlying crime spree. *Id.* at 278. By contrast, Defendants Duncan, Gayles, and Harris were in their 20s at the time they participated in the underlying crime spree here and each had notable convictions prior to this prosecution.

[10] It is also important to emphasize that Defendants Duncan, Harris, and Gayles are all of essentially the same age and each have similar backgrounds, as set forth in each Defendant's PSR. The Defendants were young men in their twenties at the time they participated in the crime spree underlying this prosecution, and each had multiple prior criminal convictions. The Defendants have comparable educational attainment, each holding a GED or high school diploma (Defendant Harris completed some college courses but did not attain a degree). Each Defendant grew up, at

to avoid "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," it is appropriate to impose the same twelve-year reduction in each case. *See* 18 U.S.C. § 3553(a)(6). Accordingly, the terms of incarceration for Defendants Duncan, Gayles, and Harris will each be reduced to 240 months, or twenty years.

### III

This matter is also before the Court on Defendants Gayles and Harris's motions to vacate their sentences pursuant to 28 U.S.C. § 2255. Defendant Gayles's motion and accompanying briefing contend, *inter alia*, that Defendant Gayles's conviction must be set aside because: (i) Defendant Gayles was prejudiced by the ineffective assistance of counsel; (ii) the non-retroactivity of the First Step Act's amendments to § 924(c) sentencing violates the Fifth Amendment's guarantee of equal protection; and (iii) Defendant Gayles was actually innocent of the § 924(c) offenses charged. *See* Dkts. 247, 248, and 272. Defendant Gayles's motion was referred to Magistrate Judge Buchanan, who subsequently issued a Report and Recommendation finding that the motion should be denied in all respects. *See* Dkt. 319.

Defendant Gayles objected to the Report and Recommendation in only one respect, namely Magistrate Judge Buchanan's conclusion that the nonretroactivity of the First Step Act's § 924(c) amendments violates equal protection. *See* Dkt. 329. Defendant Gayles contends that there is no rational basis upon which to distinguish between § 924(c) offenders sentenced before and after the First Step Act, and accordingly Defendant Gayles claims that he is entitled to "a reduction in sentence in conformity with the First Step Act." *Id.* at 4, n. 2. However, that relief is identical to

---

least in part, in Southeastern or Southwestern Washington, D.C., and each reported experiencing difficult childhoods to some extent (for example, each Defendant reported experiencing personal or family substance abuse issues in childhood). Of course, Defendants Duncan, Gayles, and Harris's backgrounds are not identical in every respect, but their similar personal profiles confirm the propriety of imposing equal sentence reductions. *See* 18 U.S.C. § 3553(a)(1) (instructing the sentencing court to consider the "history and characteristics" of each defendant).

the relief that Defendant Gayles has sought and received here pursuant to 18 U.S.C. § 3582(c)(1)(A). Accordingly, Defendant Gayles's objection is moot and must be overruled. Otherwise, discerning no clear error in the findings of fact and recommendations set forth by Magistrate Judge Buchanan,[11] the Report and Recommendation is hereby adopted and Defendant Gayles's motion to vacate must be denied.

To continue, Defendant Harris has also filed a substantially similar motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (Dkt. 252) as well as an amended motion (Dkt. 277). In essence, Defendant Harris contends that his sentence must be set aside for three reasons: (i) ineffective assistance of counsel at sentencing; (ii) actual innocence of the § 924(c) offenses charged; and (iii) because § 924(c) is unconstitutionally vague under the First Step Act. Defendant Harris's motions were referred to Magistrate Judge Buchanan, who subsequently issued a Report and Recommendation concluding that the motions should be denied in all respects. Dkt. 320. Defendant Harris filed no objections to the Report and Recommendation. Accordingly, again discerning no clear error in the findings of fact and recommendations set forth by Magistrate Judge Buchanan, the Report and Recommendation is hereby adopted and Defendant Harris's motions to vacate must be denied. *See Diamond*, 416 F.3d at 315.

### IV.

For reasons stated in this Memorandum Opinion, Defendants Duncan, Gayles, and Harris's motions for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) are granted, and each of their sentences will be reduced from a total of 384 months to 240 months. A ruling on Defendant Gaines's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) is deferred pending

---

[11] *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (in the absence of any objections to a magistrate's report, the Court "need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'").

appointment of counsel and additional briefing. Finally, Defendants Gayles and Harris's motions to vacate pursuant to 28 U.S.C. § 2255 must be denied. Appropriate Orders will issue separately.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record and to Defendants at their respective addresses.

Alexandria, Virginia
February 10, 2022

/s/
T. S. Ellis, III
United States District Judge

21